**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                              :
SUAAD DKHEEL,                 :
                              :
            Plaintiff,        :
                              :   Civil Action No. 04 CV 5799 (JAG)
                              :
      v.                      :
                              :   **OPINION**
JO ANNE B. BARNHART,          :
COMMISSIONER OF SOCIAL        :
SECURITY,                     :
                              :
            Defendant(s).     :
_____:

**GREENAWAY, JR., U.S.D.J.**

**INTRODUCTION**

Plaintiff Suaad Dkheel ("Plaintiff") seeks review of the Commissioner of Social Security's (the "Commissioner") decision denying her application for Supplementary Social Security Income ("SSI"), pursuant to 42 U.S.C. § 405 (g)(2000).[1] Plaintiff asserts that the Commissioner's decision was not supported by substantial evidence and should therefore be reversed or, in the alternative, remanded to the Commissioner for reconsideration. Additionally, Plaintiff argues that Administrative Law Judge Katherine C. Edgell ("ALJ Edgell") did not

---

[1] This section of the Social Security Act [hereinafter the "Act"] provides that any individual who was a party to a hearing before the Secretary may commence a civil action within 60 days after the Secretary's final determination. The appropriate forum for this action is the district court of the United States judicial district in which Plaintiff resides. 42 U.S.C. § 405 (g).

1

support her conclusion adequately in that Plaintiff retained the residual functional capacity to perform simple, repetitive work at all levels of exertion.  For the reasons set forth in this opinion, this Court finds that the Commissioner's decision is not an inappropriate posture for meaningful judicial review, and remands this case so that the ALJ may develop the record and explain her findings.

## PRIOR PROCEEDINGS

On September 12, 2001, Plaintiff filed an application for SSI, alleging disability since September 1, 2001.[2]  (Tr. 12.)  Plaintiff stated that she suffered from arthritis, reflux, depression, high cholesterol, anxiety, and stress.  (Tr. 12, 25, 78.)  Plaintiff's initial application and motion for reconsideration were both denied. (Tr. 20, 27.)  Subsequently, Plaintiff sought a hearing before an Administrative Law Judge to review the application *de novo*.[3]  On December 24, 2003, ALJ Edgell issued her decision based upon a hearing held on December 2, 2003.  (Tr. 17, 265.)  In the decision, she made these findings:

1. The claimant has not engaged in substantial gainful activity since the disability onset of date.

2. The claimant has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations, namely mild degenerative arthritis, depression, anxiety and gastrointestinal reflux disease (GERD). (20 C.F.R. § 416.920(b)).

3. These medically determinable impairments do not meet or medically equal one of

---

[2] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision.  42 U.S.C. § 405 (g).  "Tr." refers to said transcript.

[3] If the claimant "receives an adverse reconsideration determination, he is entitled to an evidentiary hearing and *de novo* review by an Administrative Law Judge."  Heckler v. Day, 467 U.S. 104, 106 (1984).

        the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible, as they are not supported by the substantial evidence of record.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. (20 C.F.R. § 416.927).

6. The claimant has the residual functional capacity to perform simple, repetitive work at all levels of exertion.

7. The claimant is able to perform her past relevant work as shoe ticketer. (20 C.F.R. § 416.965).

8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 C.F.R. § 416.920(g)).

(Tr. at 17.) Based on these findings, ALJ Edgell concluded that Plaintiff was not entitled to a period of disability under Section 1614(a)(3)(A) of the Social Security Act. (Tr. 17.)

On September 24, 2004, the Social Security Administration Appeals Council denied the request for review of the ALJ's decision, finding the ALJ's decision to be the final decision of the Commissioner of Social Security in the case. (Tr. 4.) Plaintiff subsequently filed this action seeking review of the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE FACTS

### A. Background

Plaintiff was born on May 27, 1946, and has a fifth grade education. (Tr. 19, 268.) She currently resides with her husband and her only child. (Tr. 266.) Plaintiff's native language is Arabic and she cannot speak or understand English. (Tr. 262, 268.) Plaintiff was admitted into the United States as a refugee under section 207 of the Immigration and Nationality Act on August 24, 1998. (Tr. 62.)

Plaintiff has a brief work history, working for Sneaker Stadium for approximately three to four months until the store closed. (Tr. 16, 122, 272.) She worked as a shoe ticketer in the store. (Tr. 16.) On October 1, 2001, in a disability report form, Plaintiff claimed that she primarily performed her job while sitting and that she was required to lift less than ten pounds daily. (Tr. 69.) On August 11, 2002, in a second disability report form, Plaintiff maintained that she did not know how many hours she performed her job while sitting. (Tr. 90.) At this time, Plaintiff also stated that the heaviest amount she was required to lift while working was ten pounds, but the weight she frequently lifted was twenty-five pounds. (Tr. 90.) According to the Dictionary of Occupational Titles ("D.O.T."), the physical demands of a ticketer are "light." (Tr. 16, 85.)

Prior to coming to the United States, Plaintiff resided in Iraq. (Tr. 274.) While in Iraq, during the Gulf War, Plaintiff's neighbor's home was hit by a Scud missile. (Tr. 274.) Plaintiff's house was also damaged and both she and her husband were injured. (Tr. 274-75.) After moving to the United States, Plaintiff asserts that she became depressed. (Tr. 193.) She states that she often feels afraid at night and has concentration problems as a result of the missile incident. (Tr. 15, 275.) Plaintiff states that her depression led her to lose twenty-five pounds over three years. (Tr. 194.) Plaintiff also states that she continues to suffer from memory loss, fatigue, dizziness, concentration problems, and has trouble sleeping. (Tr. 68, 270, 273.) Additionally, Plaintiff claims that her conditioned worsened after she discovered that her son had epilepsy and after her husband suffered two heart attacks. (Tr. 33, 257.)

**B.     Medical Evidence**

The record indicates that Plaintiff received medical attention on several occasions.

1.     Examination by Dr. Lan Tu

Dr. Lan Tu was Plaintiff's treating physician and he examined Plaintiff on September 13, 1999.  (Tr. 242.)  According to Dr. Tu, Plaintiff is unable to place items less than five pounds on a high shelf.  (Tr. 242.)  In his evaluation, Dr. Tu also noted that Plaintiff is unable to perform most job related activities, but he did not elaborate on these determinations.  (Tr. 243.)  In addition, according to a prior examination by gynecologist Dr. Marina I. Martinez, to whom Dr. Tu referred Plaintiff, Plaintiff has "huge bleeding hemorrhoids."  (Tr. 252-53.)  Dr. Martinez also noted that Plaintiff has a "very bad language barrier" even though her husband served as an interpreter.  (Tr. 252.)

2.     Examination by Dr. Mohamed Kawam

Dr. Mohamed Kawam examined Plaintiff for the first time on December 6, 2000, at Wayne General Hospital.  (Tr. 126.)  Plaintiff was admitted because of an episode of syncope[4] and because of a sharp pain in her epigastric[5] area which caused her to pass out.  (Tr. 134.)  Dr. Kawam found that Plaintiff is well-nourished and well-developed and that she suffers from no cardiac abnormalities.  (Tr. 134.)

---

[4] Syncope is a "brief lapse in consciousness" caused by various factors such as emotional stress and nerve stimulation.  Mosby's Medical, Nursing & Allied Health Dictionary 1576 (5th ed. 1998) (hereinafter "Mosby's").

[5] The epigastric region refers to the upper zone of the abdomen.  Id. at 575.

In his report, Dr. Kawam stated that Plaintiff suffers from hypercholesterolemia[6], arthritis, reflux[7] and depression. (Tr. 129). Dr. Kawam also stated that Plaintiff is limited in her work capacity from standing, walking, climbing, stopping, bending, lifting, and the use of her hands. (Tr. 129). Dr. Kawam stated that Plaintiff's work capacity as a result of cardiac disease is Class 1[8], and as a result of a musculoskeletal inadequacy or failure is Class 3[9]. (Tr. 131.) As a result, Dr. Kawam concluded that Plaintiff could not be employed and that this incapacity would likely be greater than twelve months. (Tr. 130.)

3.     Examination by Dr. Michael Pollack

Dr. Michael Pollack performed a consultative examination of Plaintiff on December 20, 2001. (Tr. 165.) In his report, Dr. Pollack noted that Plaintiff complained of chronic neck, back, and bilateral knee pain. (Tr. 165.) At the time, Plaintiff was being treated with prescription medications for pain relief. (Tr. 165.) Plaintiff also complained of two years of depression. (Tr. 165.) Plaintiff suffers from, and is being treated for, gastroesophageal reflux disease (GERD)[10] as well. (Tr. 165.)

---

[6] Hypercholesterolemia is when "greater than normal amounts of cholesterol are present in the blood." Id. at 789.

[7] Reflux is an "abnormal backward or return flow of a fluid." Id. at 1396.

[8] A Class 1 limitation of work capacity for a patient with organic heart disease is the lowest limitation possible and permits a patient to walk, climb stairs, and perform daily activities freely without fear of symptoms.

[9] A Class 3 limitation of work capacity for a patient with musculoskeletal inadequacy allows a patient to perform only little or none of the duties of usual occupation or self-care.

[10] GERD is the "backflow of contents of the stomach into the esophagus." Mosby's at 677.

Through his examination, Dr. Pollack found that Plaintiff appears well-developed and well-nourished and has a normal gait. (Tr. 166.) Dr. Pollack also found that Plaintiff does not have any obvious deformities in her spine or joints that prevents her from having a full range of motion. (Tr. 167.) Specifically, evaluation of Plaintiff's spine and chest revealed a loss of normal lordosis in the cervical spine, a normal lumbosacral spine, and a normal chest. (Tr. 172.) In addition, upon evaluation, Plaintiff's right and left knee were deemed normal. (Tr. 173.) Based on his observation of Plaintiff's actions and mannerisms, Dr. Pollack also ruled out a psychiatric disorder. (Tr. 167.) Dr. Pollack did, however, find that Plaintiff suffers from hyperlipidemia[11], cholelithiasis[12], and GERD. (Tr. 167.) Overall, Dr. Pollack found Plaintiff's condition to be fair. (Tr. 167.)

   4.  Examination by Dr. Joseph Buceta

Dr. Joseph Buceta is the consultative psychiatrist for the Department of Labor of the State of New Jersey. (Tr. 193.) In his report on March 9, 2002, Dr. Buceta noted that Plaintiff complained of severe depression. (Tr. 26, 193.) Plaintiff stated that she had arthritis, stomach pains, and hypercholesterolemia, and as a result of these conditions, her appetite was poor and she had trouble sleeping. (Tr. 194.) Plaintiff also stated that her husband and son take care of much of her daily living activities such as cooking, cleaning and shopping. (Tr. 194.)

After examining Plaintiff, Dr. Buceta concluded that Plaintiff is able to make eye contact, her speech is coherent, and her long-term memory is intact. (Tr. 195.) In regard to Plaintiff's short-term memory, Dr. Buceta stated that Plaintiff is unable to remember simple instructions

---

[11] Hyperlipidemia is "an excess of lipids . . . in the plasma." Id. at 791.

[12] Cholesteroleresis is "the increased elimination of cholesterol in the bile." Id. at 325.

after five minutes. (Tr. 195.) Dr. Buceta also noted that Plaintiff is unable to perform simple mathematics and her memory is limited mainly to family events. (Tr. 195.) Dr. Buceta ultimately concluded that Plaintiff's inability to speak and understand English is the primary reason for her depression. (Tr. 195.) Dr. Buceta did not attribute Plaintiff's condition to any true mental incapacities. (Tr. 195.) However, Dr. Buceta did diagnose Plaintiff with depression N.O.S. (Not Otherwise Specified depressive disorder), and identified her GAF at 60.[13] (Tr. 195-96.) Overall, he found her mental condition to be fair and found that she is able to manage her own funds. (Tr. 196.)

**C.     Plaintiff's Testimony at ALJ Hearing**

At the hearing before ALJ Edgell, Plaintiff testified that she was 58 years of age. (Tr. 267.) She stated that she lived with her husband, who no longer works, and her 20 year old son, who attends school five days a week. (Tr. 266.) Plaintiff stated that she was born in Iraq, and lived through a war there. (Tr. 268, 274.) She stated that her neighbor's house was bombed and that she and her husband were injured in the missile attack. (Tr. 274.) Plaintiff testified that she moved to the United States approximately four years ago. (Tr. 268.) She noted that she was unable to go anywhere alone since she could not speak or understand English. (Tr. 268.) She also stated that her husband and son carry out daily functions such as cooking and cleaning because she has been unable to due so. (Tr. 271-72.) In addition, she stated that her husband is weak as well because he has suffered two heart attacks. (Tr. 270.) Plaintiff further testified that she has been unable to work because of her depression and fear. (Tr. 269.) She asserted that she

---

[13] According to the Diagnostic and Statistical Manual for Mental Disorders, Fourth Edition (DSM-IV), a GAF of 60 is "consistent with moderate symptoms or moderate difficulty in social or occupational functioning." (Tr. 14.)

8

has been unable to sleep at night and has been afraid to go anywhere, fearing that she will become lost. (Tr. 269.) She also mentioned that she suffers from memory loss and anxiety attacks which cause her to pass out. (Tr. 273, 276.) Plaintiff testified that she has joint pain as well. She stated that her joint pain began approximately five to six years ago; about three years ago, she began seeing Dr. Kawam monthly. (Tr. 269-70.) She stated that prior to becoming sick, she worked in a shoe store for three months until the store closed and she was let go. (Tr. 272-73.)

**D.     Plaintiff's Son's Testimony at ALJ Hearing**

At the hearing before ALJ Edgell, Plaintiff's son testified that Plaintiff's condition has worsened over time. (Tr. 281.) He testified about one incident where Plaintiff fainted after she visited a psychiatrist. (Tr. 282.) He also stated that he takes care of housework such as cooking, shopping, and cleaning. (Tr. 282.) He asserted that she is unable to walk long distances without assistance and is unable to sleep for long periods. (Tr. 284-85.) He testified that she cries sometimes and feels helpless because of her joint pain (Tr. 286-87.) He also stated that she loses focus and lacks energy. (Tr. 288.) He noted that in the past, she worked for a shoe store for three months. (Tr. 283.)

## DISCUSSION

**A.     Standard of Review**

This Court's review of the Commissioner's final decision is limited to a determination of whether ALJ Edgell applied the proper legal standards in making her findings of fact, and whether these findings are supported by substantial evidence as viewed in the record as a whole. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). If the Commissioner's decision is "supported

9

by substantial evidence," the District Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence is defined as "more than a mere scintilla" of evidence, but may be "less than a preponderance of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (citation omitted). In reviewing the totality of the evidence, this Court may not re-weigh the evidence in the record, Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998), or "substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted), cert. denied, Williams v. Shalala, 507 U.S. 924 (1993) (citation omitted). Therefore, when substantial evidence supports the ALJ's finding, the reviewing court must affirm the ALJ's holding, even if the evidence presented may also support a different conclusion. LaCorte v. Bowen, 678 F. Supp. 80, 84 (D.N.J. 1988).

**B.** **Statutory Standards**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. §423(d)(5) (2000). To qualify for SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381 (2000). A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D.Del. 2002). Finally, while subjective complaints of pain are considered, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). An impairment only qualifies as disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3) (2000).

**C.     The Five Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520 (2003). At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[14] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

---

[14] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510 (2003).

11

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in Appendix I, Regulation No. 4, 20 C.F.R. § 404.1520(d). If the claimant's impairment(s) meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment(s) or its equivalent, the analysis proceeds to steps four and five. Step four requires the Commissioner to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is unable to resume his past work, and his condition is deemed "severe" yet not listed, the evaluation moves to the final step. At the final step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1560(c)(1) (2003). If the Commissioner finds a significant number of jobs that the claimant can perform, the claimant will be found not disabled. Id.

**D.     ALJ Edgell's Findings**

ALJ Edgell reviewed the record *de novo*, performed the five step evaluation, and concluded that Plaintiff was not disabled, as defined in 20 C.F.R. § 416.920. (Tr. 12-13.) In accordance with step one, ALJ Edgell first determined that Plaintiff did not engage in substantial gainful activity since her alleged onset of disability on September 1, 2001. At steps two and three of the inquiry, ALJ Edgell found that although Plaintiff's impairments were "severe" within the meaning of the regulations, they did not meet or equal in severity any impairment listed in Appendix I of 20 C.F.R. Pt. 404, Subpt. P of Regulations No. 4. (Tr. 13.) ALJ Edgell noted that

Plaintiff's subjective complaints of pain and fatigue did not limit her ability to work because the objective medical evidence for her impairments was not sufficient. (Tr. 15.)

At the fourth step, ALJ Edgell found that Plaintiff has the residual functional capacity to perform "simple, repetitive work at all levels of exertion." (Tr. 16.) Since Plaintiff's position as a shoe ticketer is performed at a light exertional level and the position requires low language skills, and little technical knowledge, ALJ Edgell concluded that Plaintiff is able to perform the job requirement of her past relevant work. (Tr. 16, 85.) ALJ Edgell went on to state that even if Plaintiff's three month past work experience is not considered[15], there are other jobs existing in the nation that Plaintiff can perform consistent with her medically determinable impairments, functional limitations, age, education, and relevant work experience. (Tr. 16.) ALJ Edgell noted that this assessment was consistent with medical-vocational rule 204.00. (Tr. 16.)

**E.     Analysis**

   **1. The Commissioner Has Not Met Third Circuit Standards**

Plaintiff contends ALJ Edgell's decision should be reversed or, in the alternative, remanded because the third step of the determination did not assess adequately whether Plaintiff's impairment matches or is equivalent to a listed impairment. (Plaintiff's Brief at 9. (hereinafter "Pl. Br.")) Plaintiff is correct in asserting that the ALJ decision does not fulfill the requirements of step three adequately; as a result, the matter should be remanded so that the ALJ may develop the record fully.

In Burnett v. Commissioner of SSA, 220 F.3d 112 (3d Cir. 2000), the Third Circuit

---

[15] Plaintiff does not raise an issue regarding the duration of the past relevant work experience on appeal and therefore this Court will not address the issue.

clarified the requirements of step three, stating that the ALJ must "set forth the reasons for his decision." Id. at 119.  The Burnett court held that the failure of an ALJ to explain the reasons for his decision at step three of the inquiry rendered his ruling "hopelessly inadequate" and "beyond meaningful judicial review." Id.  In this case, ALJ Edgell's step three analysis makes the conclusory statement that, "while [Plaintiff's] impairments are 'severe' within the meaning of the regulations, they are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P of Regulations No. 4." (Tr. 13.)  This quote constitutes the full step three analysis in this case.  As in Burnett, this determination of step three is both inadequate and beyond meaningful judicial review.  Burnett requires that the ALJ "set forth the reasons for his decision." Id. at 120.  ALJ Edgell has not met these standards.  She did not discuss the evidence or explain the reasoning supporting her determination. This renders her determination beyond meaningful review, and requires that the case be remanded in order for the ALJ to develop the record more fully.

 **2. Plaintiff's Other Arguments Are Without Merit**

Plaintiff makes three additional arguments that are without merit.  First, Plaintiff argues that ALJ Edgell erred when she failed to assess Plaintiff's mental condition properly in determining Plaintiff's residual functional capacity.  (Pl. Br. at 13-14.)  Plaintiff contends that ALJ Edgell's residual functional capacity determination should be remanded so that the ALJ can meet the requirements set forth in Social Security Rule ("SSR") 96-8P. (Id.)

In assessing residual functional capacity, the Third Circuit has required that the ALJ "consider all the relevant evidence" and accompany his finding with "a clear and satisfactory explication of the basis on which it rests." Santiago v. Barnhart, 367 F. Supp. 2d 728, 733 (E.D.

14

Pa. 2005). Furthermore, the Burnett Court held that the ALJ must "consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett, 220 F.3d at 121.

The ALJ here considered all of the evidence on Plaintiff's mental condition before her and provided an "indication of the evidence which [s]he rejected and [her] reasons for discounting such evidence," as required by Burnett. Burnett, 220 F.3d at 121. The ALJ reviewed and discussed Plaintiff's medical records, her hospital records, and her testimony. (Tr. 14-15.) She considered Plaintiff's testimony that she was depressed and suffered from fatigue and weakness. (Tr. 269.) The ALJ also considered that Plaintiff lived through the Gulf War and claimed that a Scud missile fell near her house. (Tr. 15.) She noted that Plaintiff had concentration problems, and suffered from anxiety and depression. (Tr. 15.) The ALJ also noted that claimant testified that "she cooks, but her husband and son do the shopping and cleaning." (Tr. 15). However, in examining Plaintiff's subjective reports, ALJ Edgell stated that Plaintiff's allegations of her limitations were contradicted by the findings of Dr. Buceta, who noted that Plaintiff had only "moderate difficulty in social or occupational functioning." (Tr. 14-15.) Furthermore, Plaintiff failed to produce any credible objective medical evidence of her mental condition. ALJ Edgell thus concluded that Plaintiff's subjective complaints lacked credibility and did not preclude simple, repetitive work at all levels of exertion. This conclusion is supported by substantial evidence.

ALJ Edgell further concluded that the Plaintiff's medically determinable mental impairments produced only the following work-related limitations: a poor command of English; and an unspecified depressive disorder. (Tr. 14.) Given these limitations, ALJ Edgell found that

15

Plaintiff had "no documented exertional limitations" and only "moderate difficulty in social or occupational functioning." (Tr. 16.) As such, ALJ Edgell's determination of Plaintiff's residual functional capacity met the requirements set forth in SSR 96-8P and is supported by the record sufficiently.

Second, Plaintiff contends that ALJ Edgell failed to determine the requirements necessary for Plaintiff to perform her past relevant work. (Pl. Br. at 15.) Plaintiff argues that the ALJ did not assess properly the physical or mental requirements for work as a ticketer. (Id.) According to 20 C.F.R. § 416.920(e), a claimant retains the capacity to perform her past relevant work if she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job. In the present case, ALJ Edgell determined that Plaintiff had the residual functional capacity to perform simple, repetitive work at all levels of exertion. ALJ Edgell found that Plaintiff's ability to perform simple repetitive work at all levels of exertion met the physical and mental requirements of her past relevant job as a shoe ticketer. In making her determination, the ALJ found that the D.O.T. stated that the exertional requirements for a shoe ticketer are "light." (Tr. 16.) ALJ Edgell also found that the objective medical evidence supported a determination that Plaintiff had only "moderate difficulty in social or occupational functioning." (Tr. 14.) Furthermore, to perform the job of a ticketer, technical knowledge or skills are not required. (Tr. 69, 86.) Additionally, Plaintiff notes in her October Disability Report Form that she was not required to do any writing, complete reports, or perform any duties requiring strong language skills. (Tr. 69.) Notably, as Defendant points out, Plaintiff did not stop working because she was unable to perform her job duties, but rather, Plaintiff testified that she stopped working because her employer went out of business. (Tr. 272.) As such, ALJ

16

Edgell's conclusion that Plaintiff is able to perform her past relevant work is supported by substantial evidence.  (Tr. 16, 85.)

Third, Plaintiff asserts that ALJ Edgell erred at step five of the disability evaluation. Pursuant to 20 C.F.R. 416.920(a), if a finding of disability or non-disability can be made at any point in the sequential analysis, the Commissioner will not review the claim further.  (Pl. Br. at 17.)  Accordingly, since the ALJ properly found that Plaintiff could perform her past relevant work, it was unnecessary for her to proceed to step five.  As a result, despite Plaintiff's contention that the ALJ did not follow the requirements set forth in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), any such error at step five does not effect the validity of ALJ Edgell's step four determination.  Id. at 274.

## CONCLUSION

For the reasons above, this Court finds that the Commissioner's determination fails to meet the Third Circuit standards established in Burnett, and as such is beyond meaningful judicial review.  The case is REMANDED so that the Administrative Law Judge may develop the record and explain her findings at step three, including an analysis of why Plaintiff's impairment does not meet or medically equal one of the listed impairments.

    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:   November 10, 2005